**UNITED STATES of America, Plaintiff,**

v.

**Geoffrey R. EDMONDS, Pauline Edmonds, Cyril J. Worm, Jr., Defendants.**

**CR No. 94–241–FR.**

United States District Court,
D. Oregon.

Nov. 20, 1995.

---

Kristine Olson, United States Attorney and Neil J. Evans, Assistant United States Attorney, Portland, Oregon, for Plaintiff.

Stephen R. Sady, Chief Deputy Federal Public Defender and Dennis N. Balske, Assistant Federal Public Defender, Portland, Oregon, for Defendant Geoffrey R. Edmonds.

David M. Audet, Hillsboro, Oregon, for Defendant Pauline Edmonds.

Norman Sepenuk, Portland, Oregon, for Defendant Cyril J. Worm, Jr.

## AMENDED OPINION

FRYE, District Judge:

The matters before the court are as follows:

1) Defendant Cyril J. Worm, Jr.'s Motion to Dismiss and Require the Government to Elect Between Counts (# 62);

2) Defendant Worm's Motion for a Bill of Particulars (# 64);

3) Defendant Worm's Protective Motion for Severance (# 66);

4) Defendant Geoffrey R. Edmonds' Motion to Dismiss Counts 55 & 56 of the Indictment (# 69–1), or in the Alternative, Motion to Sever (# 69–2);

5) Defendant Geoffrey R. Edmonds' Motion to Suppress Statements and Derivative Evidence (# 70–1) and to Dismiss Counts (# 70–2); and

6) Government's Motion to Dismiss Count 56 (# 92).

## BACKGROUND

Three defendants, Geoffrey R. Edmonds, Pauline Edmonds and Cyril J. Worm, Jr., are charged, in part, in the superseding indictment as follows:

1. Dominion Capital Inc. (Dominion) was an Oregon corporation organized for the purpose of loan and mortgage brokering and real estate development. Dominion operated as a private lending company, providing financing to individuals and companies buying residential property in Multnomah County, Oregon.

2. Defendant ` Geoffrey R. Edmonds was the president and 50% shareholder of Dominion. Geoffrey R. Edmonds directed and was responsible for all aspects of the daily operation of Dominion in Portland, Oregon. In his capacity as president of Dominion, defendant Geoffrey Edmonds directed, supervised and controlled the agents and employees of Dominion.

3. Defendant Pauline Edmonds was the secretary of Dominion. Pauline Edmonds assisted her husband Geoffrey R. Edmonds in the daily operation of Dominion and had primary responsibility for the corporation's finances and bookkeeping.

4. Defendant Cyril J. Worm, Jr. was the vice president and 50% shareholder of Dominion. Cyril J. Worm directed and was responsible for all aspects of the daily operation of Dominion in Seattle, Washington and had joint responsibility with Geoffrey Edmonds for the operation of Dominion in Portland. Worm also owned Rockwood Products Inc. and controlled Rockwood Products Profit Sharing Plan, both of which were used by Worm in various real estate transactions associated with Dominion.

Superseding Indictment, pp. 1–2.

All three defendants are charged with the crimes of using the mails and using wire communications in a scheme to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises. In addition, defendant Geoffrey Edmonds is charged in Counts 55 and 56 of the superseding indictment with the crimes of knowingly giving false testimony in violation of federal perjury laws.

1. *Defendant Worm's Motion to Dismiss and Require the Government to Elect Between Counts*

Defendant Worm moves the court for an order requiring the government to elect to proceed to trial on either Count 36 or Count 37 of the superseding indictment, and after this election is made, for an order of the court dismissing the remaining count as multiplicitous.

The government requests that the motion be held in abeyance pending further review of the facts and evidence in order for the government to determine whether separate transportation events are the bases for these two counts.

The government shall review the facts and evidence and respond to this motion no later than December 15, 1995.

2. *Defendant Worm's Motion for a Bill of Particulars*

A. Contentions of the Parties

Defendant Worm contends that the superseding indictment is defectively vague as to his alleged conduct in that most of the activities alleged in the indictment occurred in or around Portland, Oregon, and he was a resident of Seattle, Washington at all rele-

vant times. Defendant Worm believes that the theory of the government is that he is responsible as an aider and abetter, but that he should not have "to guess" as to what the theory of the government is. Memorandum in Support of Defendant C.J. Worm's Motion for a Bill of Particulars, p. 2.

The government contends that the introductory paragraphs of the superseding indictment charge that defendant Worm had joint responsibility with the Edmonds defendants for the daily operation of Dominion in the City of Portland, and that defendant Worm used two companies which he controlled to conduct real estate transactions with Dominion. The government states that its theory of the case is set forth in the introductory portion of the superseding indictment, and that defendant Worm is not entitled to a bill of particulars which amounts to nothing more than discovery of all of the evidence to be offered by the government to prove its case.

### B. Applicable Law

The purpose of a bill of particulars is to inform the defendant of the nature of the charges against him with sufficient precision to enable him to prepare for trial, to avoid or minimize the danger of surprise at the time of trial, and to protect him against double jeopardy. *United States v. Mitchell*, 744 F.2d 701, 705 (9th Cir.1984); *United States v. Giese*, 597 F.2d 1170, 1180 (9th Cir.), *cert. denied*, 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 405 (1979).

Whether to grant a motion for a bill of particulars is committed to the court's discretion; however, a court "should consider whether the defendant has been advised adequately of the charges through the indictment and all other disclosures made by the government." *United States v. Long*, 706 F.2d 1044, 1054 (9th Cir.1983). Even when an indictment fails to sufficiently inform the defendant of the charges against him, a bill of particulars may be denied if the defendant is otherwise fully informed of the charges. *Id.*

### C. Ruling of the Court

The court finds that the superseding indictment sufficiently informs defendant Worm of the charges that he is facing and of the theory of the prosecution. In the introductory paragraphs, the superseding indictment alleges that defendant Worm had joint responsibility with the Edmonds defendants for the daily operation of Dominion in the City of Portland, and that defendant Worm used two companies that he controlled to conduct real estate transactions with Dominion.

In the superseding indictment, defendant Worm is charged with scheming to obtain money and property by using a "straw borrower." The superseding indictment alleges how the scheme was carried out, and it charges the specific transactions in each count. In addition, defendant Worm has received extensive discovery materials to supplement the allegations in the indictment. The court concludes that the superseding indictment informs defendant Worm of the charges brought against him with sufficient precision to enable him to prepare for trial, to enable him to avoid or minimize the danger of surprise at the time of trial, and to protect him against double jeopardy.

The motion of defendant Worm for a bill of particulars is denied.

### 3. *Defendant Worm's Protective Motion for Severance*

Defendant Worm has indicated that his "protective" motion for severance was filed in order to preserve his right to request a severance after discovery has been provided and analyzed and the defenses of the other defendants are determined.

The government has no objections to this motion, but reserves the right to oppose any future motions.

### 4. *Defendant Geoffrey Edmonds' Motion to Dismiss Counts 55 & 56 of the Indictment, or in the Alternative, Motion to Sever*

#### A. Contentions of the Parties

Defendant Geoffrey Edmonds moves the court for an order dismissing the federal

perjury counts, Counts 55 and 56, on the grounds that the allegedly false statements contained therein are literally true, and that the interrogators failed to ask follow-up questions in order to avoid or clarify ambiguities and uncertainties in the answers provided.

The government contends that there is no authority for a court to dismiss a count in an indictment based upon representations as to what the facts and evidence will be at trial. The government explains that it is for the jury to decide whether or not the defendant provided a truthful answer to the inquiry during the bankruptcy hearing.

### B. Applicable Law

Rule 12(b) of the Federal Rules of Criminal Procedure provides, in part:

> **(b) Pretrial Motions.** Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion. Motions may be written or oral at the discretion of the judge. The following must be raised prior to trial:
>
> . . . .
>
> (2) Defenses and objections based on defects in the indictment or information (other than that it fails to show jurisdiction in the court or to charge an offense which objections shall be noticed by the court at any time during the pendency of the proceedings).

### C. Analysis

■ In Count 55 of the superseding indictment, the grand jury charges, in part, that:

> On or about May 10, 1991 and January 23, 1992, in the District of Oregon, **GEOFFREY R. EDMONDS,** defendant, while under oath and testifying in a proceeding of the United States Bankruptcy Court, District of Oregon, knowingly and contrary to such oath testified to a material matters [sic] which he did not believe to be true, namely:
>
> At the time of Edmonds' testimony on May 10, 1991, the Bankruptcy Court was conducting a hearing to determine whether or not a trustee should be appointed to conduct the business of Dominion Capital and thus remove defendants Geoffrey Edmonds, Cyril J. Worm and Pauline Edmonds from daily control of Dominion. The allegations presented to the Bankruptcy Court included those of mismanagement by Geoffrey Edmonds and efforts on his part to avoid certain restrictions on a business attempting to reorganize under Chapter 11 of the Bankruptcy Code. It was material to the hearing for the court to determine (1) the true nature of Dominion's relationship with Mary Matriotti; (2) whether the creditors had a claim against Mary Matriotti as well as Dominion; and (3) the nature of Edmonds' past business practices.
>
> During his bankruptcy court testimony on May 10, 1991, Geoffrey Edmonds knowingly testified in response to questions with respect to one or more of the material matters alleged in the preceding paragraph, as follows:
>
> Q. Did Ms. Matriotti personally come down here and pick out the properties purchased?
>
> A. Not all—not all of the times, no. We were her agent, and I selected a lot of them.
>
> Q. So you picked out a lot of these properties for Ms. Matriotti?
>
> A. Yes. Based on—there was some quite rigid criteria and an agreement between us based on what the criteria was.
>
> The above testimony of **GEOFFREY R. EDMONDS,** as he then and there well knew and believed was false in that (1) Mary Matriotti never came down to Portland, Oregon to select properties to purchase; and (2) there was no agreement between Mary Matriotti and Dominion regarding what properties to select.
>
> All in violation of Title 18, United States Code, Section 1623.

Superseding Indictment, pp. 19–20.

Defendant Geoffrey Edmonds argues that the allegations in the superseding indictment fail to state a claim because (1) the initial question, which is compound, received a literally true answer; and (2) any confusion or

uncertainty regarding these answers must be laid at the feet of the questioner.

The government argues that it is for the jury to decide whether defendant Geoffrey Edmonds understood the questions and thereafter gave false answers.

18 U.S.C. § 1623(a) provides, in part, that "[w]hoever under oath ... in any proceeding before or ancillary to any court ... of the United States knowingly makes any false material declaration ... shall be fined under this title or imprisoned not more than five years, or both."

In *United States v. Boone*, 951 F.2d 1526, 1536 (9th Cir.1991), the court explained:

> Under *Bronston v. United States*, 409 U.S. 352, 361–62, 93 S.Ct. 595, 601–02, 34 L.Ed.2d 568 (1973), the federal perjury statute, 18 U.S.C. § 1621, does not reach a witness' answer that is literally true, but unresponsive, even assuming the witness intends to mislead his questioner by the answer. A similar standard applies to prosecutions under § 1623, false testimony before the Grand Jury, because the underlying need for truthful testimony is the same.

In the superseding indictment, the grand jury alleges that defendant Geoffrey Edmonds was asked the following: "Did Ms. Matriotti personally come down here and pick out the properties purchased?" and defendant Geoffrey Edmonds answered: "Not all—not all of the times, no. We were her agent, and I selected a lot of them." *Id.* at 20.

In the superseding indictment, the grand jury alleges that "[t]he above testimony of **GEOFFREY R. EDMONDS,** as he then and there well knew and believed was false in that (1) Mary Matriotti never came down to Portland, Oregon to select properties to purchase...." *Id.*

The court concludes that defendant Geoffrey Edmonds' answer of "no" was literally true. The government states that "[p]erhaps if defendant G. Edmonds had simply responded with a 'No' then that would be literally true. The response, though, went beyond a simple 'No' and made affirmative false statements." Government's Response

to Motion to Dismiss Counts 55 & 56, pp. 4–5. This court finds that there are no "affirmative false statements" in the answer given by defendant Geoffrey Edmonds that "[n]ot all—not all of the times, no. We were her agent, and I selected a lot of them." While there are affirmative false implications, 18 U.S.C. § 1623(a) requires an affirmative "false material declaration." The facts alleged in this portion of Count 55 of the superseding indictment do not state a false material declaration. In *United States v. Boone*, 951 F.2d at 1536, the court reversed a perjury conviction, stating:

> Although Swayze's answer is arguably misleading, the "burden is on the questioner to pin the witness down to the specific object of the questioner's inquiry." *Bronston*, 409 U.S. at 360, 93 S.Ct. at 601. Under *Bronston*, Swayze's truthful answer to the question which he was asked cannot form the basis of a perjury conviction.

■ In Count 55 of the superseding indictment, the grand jury further alleges that defendant Geoffrey Edmonds was asked: "So you picked out a lot of these properties for Ms. Matriotti?" and defendant Geoffrey Edmonds responded: "Yes. Based on—there was some quite rigid criteria and an agreement between us based on what the criteria was." *Id.* at 20.

In the superseding indictment, the grand jury alleges that "[t]he above testimony of **GEOFFREY R. EDMONDS,** as he then and there well knew and believed was false in that ... (2) there was no agreement between Mary Matriotti and Dominion regarding what properties to select." *Id.*

The statement allegedly made by defendant Geoffrey Edmonds does not include a statement that there was an "agreement between Mary Matriotti and Dominion regarding what properties to select." Even if a jury was to find beyond a reasonable doubt that "there was no agreement between Mary Matriotti and Dominion regarding what properties to select," as alleged in the superseding indictment, the statement made by defendant Geoffrey Edmonds that "there was some quite rigid criteria and an agreement

between us based on what the criteria was" would not be inconsistent with this finding.

The facts alleged in Count 55 of the superseding indictment cannot form the basis for a perjury conviction.

5. *Defendant Geoffrey R. Edmonds' Motion to Suppress Statements and Derivative Evidence and to Dismiss Counts*

The court finds that the motion of defendant Geoffrey Edmonds to suppress statements as currently filed is moot on the grounds that Count 56 is dismissed from the superseding indictment. The court will not make any ruling regarding derivative evidence or impeachment evidence based upon the record currently before the court.

6. *Government's Motion to Dismiss Count 56*

The government's motion to dismiss Count 56 is granted.

## CONCLUSION

The court rules as follows:

1) Defendant Worm's Motion to Dismiss and Require the Government to Elect Between Counts (# 62) is held in abeyance. The government shall file a further response no later than December 15, 1995.

2) Defendant Worm's Motion for a Bill of Particulars (# 64) is denied.

3) Defendant Worm's Protective Motion for Severance (# 66) is granted.

4) Defendant Geoffrey Edmonds' Motion to Dismiss Counts 55 & 56 of the Indictment (# 69–1) is granted as to Count 55 and deemed moot as to Count 56. The alternative motion to sever (# 69–2) is deemed moot.

5) Defendant Geoffrey Edmonds' Motion to Suppress Statements and Derivative Evidence (# 70–1) and to Dismiss Counts (# 70–2) is denied as moot at this stage in the proceedings.

6) Government's Motion to Dismiss Count 56 (# 92) is granted.